UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

NRG NEW ROADS HOLDINGS LLC

VERSUS

ALDEN H. HORTON, ET AL.

CIVIL ACTION

NO. 15-421-JJB-RLB

Consolidated with

NRG NEW ROADS HOLDINGS LLC

VERSUS

ANTOINETTE STEPHENS MCVEA, ET AL.

CIVIL ACTION

NO. 15-423-JJB-RLB

Consolidated with

NRG NEW ROADS HOLDINGS LLC

VERSUS

PHILLIPS ENERGY PARTNERS, LLC, ET AL.

CIVIL ACTION

NO. 15-424-JJB-RLB

Consolidated with

NRG NEW ROADS HOLDINGS LLC

VERSUS

FITE OIL & GAS

CIVIL ACTION

NO. 15-425-JJB-RLB

**RULING ON MOTION TO WITHDRAW REFERENCE**

This matter is before the Court on a Motion to Withdraw Reference and Transfer Proceedings Regarding Certain Defendants to District Court brought by Defendants[1] (Doc. 1).

---

[1] On July 17, 2015, this Court consolidated the following actions: *NRG New Roads Holdings LLC v. Alden H. Horton, et al.*, No. 15-421-JJB; *NRG New Roads Holdings LLC v. Antoinette Stephens McVea, et al.*, No. 15-423-JJB; *NRG New Roads Holdings LLC v. Phillips Energy Partners, LLC, et al.*, No. 15-424-JJB; and *NRG New Roads Holdings LLC v. Fite Oil & Gas*, No. 15-425-JJB. Each group of defendants filed their own memorandum in support of the motion to withdraw reference; the reply memorandum was filed jointly. Except for a description of the defendants, the memoranda are substantially similar. Because all defendants make the same legal arguments and have substantially the same factual background, this ruling will cite primarily to the memoranda and supporting

1

Plaintiff, NRG New Roads Holding L.L.C. ("NRG"), has filed an opposition (Doc. 5) and the Defendants have filed a reply brief (Doc. 6). Oral argument is unnecessary. The Court's jurisdiction exists pursuant to 28 U.S.C. § 1331. For the reasons stated herein, the Defendants' Motion to Withdraw Reference and Transfer Proceeding Regarding Certain Defendants to District Court is **GRANTED**.

I.  Background

This dispute involves rights in property located in Red River Parish, Louisiana ("the Property"). [2] Cajun Electric Power Cooperative, Inc. ("Cajun Electric"), under authority vested to it under Louisiana law, expropriated surface rights around the Property in 1980 and 1981. *Defs.' Supp. Mem.*, Doc. 1-1, 4. At the time of expropriation, the defendants, through their predecessors in title, were the record owners of the Property. *Id.* "Pursuant to the sales agreement and Louisiana Mineral Code article 149, [the defendants] retained the mineral rights and a right of first refusal regarding the surface rights." Doc. 1-1, 4; *see, e.g.*, *Act of Cash Sale of Immovable Property*, Doc. 1, ex. B ("It is agreed and understood that Seller herein expressly reserves to itself, its heirs, successors and assigns, all of the oil, gas and other minerals, including coal and sulphur, in, on, and under the property hereby affected and to be conveyed . . . .").

In 1994 Cajun Electric filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Middle District of Louisiana. *Compl.*, Doc. 1-4, 5. According to the defendants, because Cajun Electric only owned the surface rights of the Property at the time of bankruptcy, only those rights became a part of the bankruptcy estate. Doc. 1-1, 4-5 ("The surface rights associated with the Property became property of the Cajun Electric bankruptcy estate pursuant to 11 U.S.C. § 541, subject to the rights

---

documents submitted by the Horton defendants. Unless otherwise noted, all document citations correspond to case number 3:15-cv-421-JJB-RLB.
[2] NRG refers to the Property as the "Oxbow Site."

and obligations of Cajun Electric before it filed bankruptcy, including, without limitation, its obligations to the Defendants under Article 149 of the Louisiana Mineral Code.").[3] Pursuant to the Creditors' Plan, the Chapter 11 Trustee sold substantially all of Cajun Electric's assets (i.e. the "Acquired Assets") to Louisiana Generating LCC ("Generating"). Doc. 1-4, 5-6. Generating immediately transferred all rights to NRG. *Id.* at 6. According to the defendants, no actual notice was provided to the defendants of the bankruptcy or any transaction in bankruptcy regarding the Property—"Notice was purportedly made by using various state and national newspapers[.]" Doc. 1-1, 5. As such, "[t]he defendants did not file any claims in the bankruptcy, and no compensation was provided for any of the rights purportedly taken from the Defendants." Doc. 1-1, 5.

As stated in the Bankruptcy Court's Confirmation Order, Generating purchased "all right, title and interest of Cajun in and to the Acquired Assets . . . free and clear of any and all liens, claims and encumbrances[.]" Doc. 1-6, 34. Additionally, "[a]ll creditors or other parties in interest holding liens, claims or encumbrances against the Acquired Assets are hereby directed, no later than the Effective Date, to execute, deliver, file or record any and all lien releases" of such rights. *Id.* The Bankruptcy Court explicitly retained jurisdiction to enforce the Confirmation Order.

On February 20, 2015, NRG filed this Adversary Proceeding with the United States Bankruptcy Court for the Middle District of Louisiana. *See* Doc. 1-4. The parties disagree on

---

[3] At the time of the sale, Article 149 of the Louisiana Mineral Code provided in relevant part that:
  (A) Louisiana's ten year prescription of non-use "shall not run" on reserved mineral rights as long as the surface of the property is held by a purchaser "with expropriation authority;"
  (B) Before an expropriating authority can sell such property, it "must first offer to sell at fair market value whatever rights or interests in the land it acquired subject to the mineral reservation back to its original grantor . . . or his successor;" and
  (C) If the original grantor cannot be found, the authority must "institute a suit" and have an attorney appointed to represent the absentee grantor.
Doc. 1-1, 5 (summarizing La. R.S. 31:149 as it appeared in 1981).

the purpose and scope of the adversary proceeding. NRG claims it filed this adversary proceeding "to enforce its ownership rights to certain real estate known as the Oxbow Site, which was part of the assets NRG purchased from the Cajun Electric estate pursuant to the Confirmation Order." *Id.* at 2. Accordingly, NRG classifies this proceeding as merely an enforcement or interpretation of the Confirmation Order. *See Pl.'s Opp'n Mem.*, Doc. 5. The defendants respond by stating that this is an "erroneous" interpretation of the proceeding— "[T]he Confirmation Order at issue only addressed the assets acquired under the authority of the Bankruptcy Code, and not Defendants' rights in the Property which were ***never*** assets of the Cajun Electric estate. . . . The Bankruptcy Code cannot create new interests in property, which are only 'created and defined by state law.' " *Defs.' Reply Mem.*, Doc. 6, 2-3.

  NRG requests relief under the confirmation order and, alternatively under Louisiana law. Doc. 1-4, 10-20. Specifically, NRG requests (1) a declaratory judgment that it "acquired the Oxbow Site free and clear of all liens, claims and interests, including whatever interests the Defendants may hold with respect to the Oxbow Site;" (2) an injunction enjoining the defendants "from maintaining any recorded interest, lien, or encumbrance of any type or kind whatsoever encumbering or impairing the Oxbow Site, and ordering [the defendants] to file releases of any and all of their recorded interests in the Oxbow Site;" (3) in the alternative, a declaratory judgment that "the applicable provisions of the [Louisiana] Civil Code served to extinguish [the defendants] right of first refusal to purchase any property located within the Oxbow Site no later than April 2010;" (4) in the alternative, a declaratory judgment that "the applicable provisions of the [Louisiana] Mineral Code served to extinguish the mineral rights on the Oxbow Site held by [the defendants] no later than April 2010;" and (5) in the alternative, a declaratory judgment that "NRG acquired ownership of the Oxbow Site and all mineral rights attendants thereto no later

4

than April 2010" pursuant to Louisiana's ten year prescriptive period. *Id.* In its Answer, the defendants requested a jury trial and asserted the affirmative defenses of "(1) lack of notice of the underlying bankruptcy case, and (2) failure of [Cajun Electric] to provide defendants with their rights under the laws of the United States and the State of Louisiana, thereby causing the underlying sale from [Cajun Electric] to plaintiff's ancestor in title to be defective and an absolute nullity."[4] Doc. 1-5, 2. The defendants did not consent to a jury trial in the Bankruptcy Court and have not filed proof of claims in this matter. Doc. 1-1, 6.

The defendants now bring this motion to withdraw reference and transfer proceedings regarding certain defendants to the District Court.

## II. Arguments

According to the defendants, NRG only purchased the surface rights originally owned by the debtor (Cajun Electric) and not the mineral rights to the Property. Doc. 6, 1. The defendants claim to own an imprescriptible mineral servitude on the Property pursuant to the reservation of mineral rights in their favor during the original sales agreement between the defendants' predecessors in interest and Cajun Electric. *See id.* at 3. The defendants also claim that their right of first refusal regarding the surface rights was not transferred, lost, or otherwise abrogated because the defendants never received proper notice of the sale of those rights during the original bankruptcy. Doc. 1-1, 3-5 (stating that notice by publication is constitutionally insufficient under the facts of this case). Because the debtor did not provide the defendants with actual notice of the proposed sale or an opportunity to utilize their right of first refusal, the defendants argue that

---

[4] Prior to filing this adversary proceeding, NRG was involved in litigation with similarly-situated property owners. *See Taylor v. NRG New Roads Holdings, L.L.C.*, No. 14-0067, 2014 WL 2547820 (W.D. La. June 5, 2014). The plaintiffs in that case filed suit against NRG in the Western District of Louisiana to resolve "identical claims" to those at issue in this case. Doc. 1-1, 3. After the court denied NRG's motion to dismiss, the matter was settled. *Id.* Specifically, the court stated that "[t]he well-plead allegations of Plaintiffs' complaint, if accepted as true, show that Plaintiffs were unconstitutionally deprived of their property rights without notice of any kind, much less the specific form of notice required by Louisiana law and federal bankruptcy." *Taylor*, 2014 WL 2547820, at *3.

the rights at issue were never validly transferred from the debtor and the two sales of the property (Cajun Electric to Generating and Generating to NRG) are nullities and void under Louisiana law and the U.S. Constitution. *Id.* at 6. The defendants have also asserted a right to a jury trial in this matter, but they have expressly not consented to a jury trial in the bankruptcy court. *Id.* at 1, 8.

NRG asserts that it received the Oxbow Site free and clear of all liens, claims, and encumbrances. Doc. 5, 1. At no point does NRG expressly identify the exact property rights that constituted the "acquired assets" of the bankruptcy estate. Rather, NRG refers to the "acquired assets" as the Oxbow Site. NRG simply asserts that the Confirmation Order granted NRG, through Generating, all rights and interests to the Oxbow Site free and clear of all liens, claims, and encumbrances. *Id.* Despite this repeated assertion, NRG does not clearly articulate its argument. NRG appears to be arguing that the mineral rights and the right of first refusal held by the defendants are liens, claims, and encumbrances on the rights purchased from Generating.[5] *See* Doc. 5. Accordingly, NRG argues that resolution of the adversary proceeding will be determined by bankruptcy law or how the Bankruptcy Court interprets its Confirmation Order. *Id.* at 6. Additionally, NRG argues that the Bankruptcy Court is familiar with the facts and issues in this action, withdrawal of the reference will result in mirror-image suits before two separate courts, and that a jury trial is not warranted in this action.[6] *Id.* at 6-8.

**III.    Discussion**

---

[5] The defendants characterize NRG's argument by stating that "NRG alleges that it acquired the property from Cajun Electric and Louisiana Generating LLC free and clear of any outstanding rights held by the Defendants – even as to the mineral rights and any right of first refusal clearly held by those individuals under Mineral Code article 149 and the underlying deed." Doc. 1, 6.

[6] NRG alternatively requests the Court to refer the adversary proceeding to the Bankruptcy Court for the purpose of issuing proposed findings of fact and conclusions of law. Doc. 5, 10. The Court declines NRG's request.

A district court may withdraw a reference to the bankruptcy court "for cause shown." 28 U.S.C. § 157(d) (permissive withdrawal).  In determining whether there is cause, the Fifth Circuit considers several factors: (1) whether the nature of the proceedings are core or non-core; (2) whether withdrawal promotes the economical use of the parties' resources; (3) whether withdrawal will promote uniformity in bankruptcy administration; (4) whether withdrawal motivates forum-shopping; (5) whether withdrawal will expedite the bankruptcy process; and (6) whether a party has demanded a jury trial.  *Holland Am. Ins. Co. v. Succession of Roy*, 777 F.2d 992, 999 (5th Cir. 1985) (*Holland* factors).   Ultimately, the decision to withdraw reference from the bankruptcy court is "left to the discretion of the district court."  *In re Mirant Corp.*, 197 F. App'x 285, 294 (5th Cir. 2006).

    a. *Nature of the Proceeding*

The primary consideration for purposes of permissive withdrawal is whether a proceeding is core or non-core.  *See In re Orion Pictures Corp.*, 4 F.3d 1095, 1101 (2d Cir. 1993); *In re Coe Truman Techs., Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997).  Although § 157(d) does not define what is a "core" proceeding, the Fifth Circuit defines core proceedings as those that "involve[] a right created by the federal bankruptcy law" or that "would arise only in bankruptcy."[7] *Kingdom Fresh Produce, Inc. v. Delta Produce, LP*, No. 5:14-MC-899-DAE, 2015 WL 869240, at *4 (W.D. Tex. Feb. 27, 2015) (quoting *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987)).  Core proceedings include, among others, the interpretation or enforcement of bankruptcy orders,[8] restructuring of the debtor-creditor relations,[9] and "other proceedings

---

[7] Additionally, core proceedings "arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just a procedural vehicle for the assertion of a right conferred by some other body of law, normally state law."  *Travelers Indem. Co. v. Babcock & Wilcox Co.*, No. CIV.A. 01-3387, 2002 WL 100625, at *3 (E.D. La. Jan. 23, 2002) (quoting *In re U.S. Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997)).

[8] *In re Karykeion, Inc.*, No. 12-1363-MoMkTa, 2013 WL 1890626, at *3 (9th Cir. 2013); *In re FormTech Indus., LLC*, 439 B.R. 352, 357 (Bankr. D. Del. 2010).

affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims . . . ."[10] Despite the "liberal breath" of the "other proceedings" language located in § 157(b)(2)(O), "the Fifth Circuit has declined to give [it] a broad reading . . . because to do so would make the entire range of proceedings within bankruptcy jurisdiction fall within the scope of a 'core proceeding,' which is contrary to legislative intent." *In re Gulf States Long Term Acute Care of Covington, LLC*, 455 B.R. 869, 875 (E.D. La. 2011) (citing *Wood*, 825 F.2d at 95).

If, however, the proceeding "does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy law it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or non-core proceeding." *Wood*, 825 F.2d at 97. Proceedings based on "state created rights"—such as state contract or property rights—are non-core proceedings. *See Post Confirmation Bd. of Wadleigh Energy Grp., Inc. v. Wadleigh*, 516 B.R. 850, 855 (Bankr. E.D. La. 2014).

Generally, a proceeding arising after the confirmation of the bankruptcy court's reorganization plan ("post-confirmation proceeding") will be considered non-core unless the claim affects "an integral aspect of the bankruptcy process—there must be a close nexus to the bankruptcy plan or proceeding." *See Stoe v. Flaherty*, 436 F.3d 209, 216 n.3 (3d Cir. 2006) (quotation omitted). For example, a post-confirmation proceeding was considered "core" because the disputes at issue concerned (1) "the *interpretation and enforcement* of a prior sale order of the bankruptcy court" and (2) whether insurance proceeds were included as "property of the estate." *In re Hereford Biofuels, L.P.*, 466 B.R. 841, 844 (Bankr. N.D. Tex. 2012) (emphasis

---

[9] *N. Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) (distinguishing these proceedings from those dealing with "state-created private rights").
[10] 28 U.S.C. § 157(b)(2)(O). Section 157(b) provides a non-exhaustive list of core proceedings.

added). In contrast, there is not a close nexus to the bankruptcy proceeding when the dispute arises post-confirmation and involves only state created rights. *See Liljeberg Enters., Inc. v. Lifemark Hosps. of La., Inc.*, No. 99-3750, 2000 WL 63307, at *3 (E.D. La. Jan. 21, 2000) (finding that the dispute at issue, involving a breach of contract, was a "non-core matter that is simply 'related' to the bankruptcy action").

In this case, the post-confirmation adversary proceeding, which hinges primarily on a state law analysis, is a non-core proceeding. The Court disagrees with NRG's classification of its adversary proceeding as merely an interpretation and enforcement of the bankruptcy court's confirmation order. The adversary proceeding primarily involves state created rights, such as the defendants' mineral servitude rights, right of first refusal, and the state's prescriptive period. Moreover, the adversary proceeding was initiated over fifteen years after the underlying bankruptcy proceeding concluded, and was filed by a non-debtor against numerous individuals that did not participate in the underlying bankruptcy. If NRG intends to argue that it somehow acquired the mineral rights to the Property or that such rights are considered a "lien, claim, or encumbrance" on the surface rights purchased through Cajun Electric's bankruptcy, then such arguments depends on an interpretation of the applicable state law. Accordingly, this post-confirmation proceeding does not arise under the bankruptcy code and does not involve an integral aspect of the bankruptcy proceeding. The Court finds that the adversary proceeding involves primarily non-core issues and, therefore, the nature of the proceeding strongly favors withdrawal.

    b. *Judicial Economy*

Generally, judicial economy[11] favors maintaining the case in the bankruptcy court when a bankruptcy court is familiar with the parties, factual background, and legal issues presented in an adversary proceeding. *See Kingdom Fresh*, 2015 WL 869240, at *5. In this case, however, the underlying bankruptcy proceeding concluded over fifteen years ago and the presiding bankruptcy judge familiar with the factual background has since retired. Doc. 6, 4-5. Additionally, the defendants were not parties to the bankruptcy proceeding, and there is no evidence that the issues presented here—mainly the defendants' rights to the property in dispute—were ever considered in the bankruptcy proceeding. *Id.* Judicial economy will not be served by maintaining the adversary proceeding in the bankruptcy court and therefore, this factor favors withdrawal.

    c. *Forum Shopping*

In determining whether to withdraw reference, the court should consider whether the motion to withdrawal is an attempt to forum shop. *Rodriguez v. Countrywide Home Loans, Inc.*, 421 B.R. 341, 353 (Bankr. S.D. Tex. 2009) (citations omitted). "When a movant has been consistent in its position that particular proceedings belong in the district court, however, there is no support for forum shopping." *Id.* (citing *Travelers Indem.*, 2002 WL 100625, at *4). In this case, the defendants have consistently asserted that the proceedings should be withdrawn to this court. *See* Doc. 1-5. There is no evidence that the defendants are attempting to forum shop by filing this motion to withdraw reference,[12] and therefore this factor favors withdrawal.

    d. *Jury Trial*

---

[11] For purposes of this ruling, "judicial economy" includes several of the *Holland* factors: (2) whether withdrawal promotes the economical use of the parties' resources; (3) whether withdrawal will promote uniformity in bankruptcy administration; and (5) whether withdrawal will expedite the bankruptcy process. Since the underlying bankruptcy proceeding has long since concluded, several of the above-mentioned factors are minimally relevant. The Court focuses on the overall judicial economy and efficiency in maintaining the action in the bankruptcy court.

[12] The defendants argue that the initial filing of the adversary proceeding in the bankruptcy court was an attempt by NRG to forum shop after receiving an adverse ruling on substantially the same issues before the United States District Court for the Western District of Louisiana. Doc. 1-1, 3; *see Taylor*, 2014 WL 2547820.

A bankruptcy court within the Fifth Circuit has no constitutional or statutory authority to conduct a jury trial without the parties' consent—even when it is a core proceeding. 28 U.S.C. § 157(e); *see In re Clay*, 35 F.3d 190 (5th Cir. 1994). "In general, the inability of a bankruptcy court to hold a jury trial in a related matter is a sufficient ground for a district court to withdraw reference to a bankruptcy court." *In re Lapeyre*, No. Civ.A. 99-1312, 1999 WL 486888, at *3 (E.D. La. July 8, 1999). Therefore, if a party makes a jury trial demand (and is, in fact, entitled to a jury trial) and does not consent to a jury trial by the bankruptcy court, then a withdrawal is warranted. Here, the defendants have demanded a jury trial while also expressly not consenting to a jury trial in the bankruptcy court. *See* Doc. 1-1, 1, 8. NRG responds by asserting that there is no right to a jury trial for the interpretation and enforcement of a judgment. Doc. 5, 7. Because the Court has already found that the adversary proceeding is not properly characterized as merely an interpretation and enforcement of the bankruptcy court's confirmation order, this argument is not persuasive.

NRG offers no other arguments why the claims and defenses at issue do not provide a right to a jury trial. NRG does argue, however, that even if a right to a jury trial exists, it does not support immediate withdrawal of the reference. Doc. 5, 8. Even though the district court is not required to withdraw reference until it is determined that a jury trial *must* be conducted, the district court can still utilize its discretion to withdrawal reference prior to that point. *See Post Confirmation Bd. of Wadleigh*, 516 B.R. at 845-55 (citations omitted). The Court need not decide at this time whether a jury trial must be conducted on the above-mentioned claims and defenses. Given NRG's lack of legal support for its assertion that these claims and defenses do not provide a right to a jury trial, and considering that the other *Holland* factors weight in favor

of withdrawal, the Court elects to exercise its discretion to withdraw the reference prior to determining whether a jury trial must be conducted.

### IV. Conclusion

Under the factors laid out in *Holland*, there is a sufficient basis for permissive withdrawal. Therefore, this Court **GRANTS** the defendants' Motion to Withdraw Reference and Transfer Proceedings Regarding Certain Defendants to District Court (Doc. 1).

Signed in Baton Rouge, Louisiana, on October 18, 2015.

_____
**JUDGE JAMES J. BRADY
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**